FILED
2020 Nov-03  AM 10:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

ELECTRONICALLY FILED
10/24/2020 2:24 PM
64-CV-2020-900295.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET<br>CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Cas<br>64<br><br>Date of Filing:<br>10/24/2020 | Judge Code: |
|---|---|---|---|

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA
### MAYS MINING, INC. v. NEXGEN EXTRACTIONS, LLC

**First Plaintiff:** ☑ Business  ☐ Individual  ☐ Government  ☐ Other    **First Defendant:** ☑ Business  ☐ Individual  ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☑ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/<br>Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ EPFA - Elder Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:   F** ☑ **INITIAL FILING**    **A** ☐ **APPEAL FROM DISTRICT COURT**    **O** ☐ **OTHER**

**R** ☐ **REMANDED**    **T** ☐ **TRANSFERRED FROM OTHER CIRCUIT COURT**

**HAS JURY TRIAL BEEN DEMANDED?** ☐ YES ☑ NO    **Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**    ☑ **MONETARY AWARD REQUESTED**  ☐ **NO MONETARY AWARD REQUESTED**

**ATTORNEY CODE:**
BRA051 _____     10/24/2020 2:24:16 PM _____     /s/ CLYDE ELLIS BRAZEAL III
                   Date                             Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**    ☐ YES ☐ NO ☑ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**   ☐ YES ☑ NO

ELECTRONICALLY FILED
10/23/2020 2:24 PM
64-CV-2020-900295.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

## IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

| | | |
|---|---|---|
| **MAYS MINING, INC.,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | _____ |
| | ) | |
| **NEXGEN EXTRACTIONS, LLC,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, Mays Mining, Inc. ("Mays Mining"), and for its Complaint for Declaratory Judgment against Defendant, Nexgen Extractions, LLC ("Nexgen"), says as follows:

### **Parties, Jurisdiction and Venue**

1.      The plaintiff, Mays Mining, is an Alabama corporation which operates several mines in Walker County.

2.      Upon information and belief, the defendant, Nexgen, is a foreign corporation doing business in Walker County, Alabama.  Nexgen is not registered to do business in Alabama.

3.      Venue is proper in this Court:  a) since the Plaintiff's principal place of business is located in Walker County, and since Nexgen does business in Walker County;  and/or b)since a substantial portion of the events giving rise to the claims occurred in Walker County and/or Nexgen seeks to exercise control over the real property of Mays Mining located in Walker County.

{BH452102.1}

**Background**

4.      Pursuant to a Membership Interest Purchase Agreement dated December 19, 2019, Mays Mining purchased the membership interests of Yellowhammer Energy Solutions, LLC, in order to take on Yellowhammer's business (the "Transaction").

5.      As part of the Transaction, Core Mining, Inc. ("Core"), purchased indirectly an ownership interest in Endeavor Insurance Company, Inc. ("Endeavor"), by purchasing the membership interest of Blue Water Indemnity, LLC, which owns Endeavor.  Core and Mays Mining share some common ownership.

6.      Endeavor is a captive insurance company which engages in the sale of certain bonds and other products related to the mining of coal in the State of Alabama.  Endeavor has issued and is anticipated to issue reclamation bonds related to the mining activities of Mays Mining.

7.      The purchase price for the Transaction, some $2.5 million, was advanced to Mays Mining by Nexgen (the "Investment") pursuant to an agreement drafted solely by Nexgen which is  entitled the Restated Profit Sharing Agreement (the "Agreement"), a true and correct copy of which is attached as **Exhibit A.**

8.      Importantly, while the title of the Agreement purports to share profits, the Agreement purports to provide for a 50/50 sharing of revenues excluding those generated by Endeavor or the Endeavor Business (as defined in the Agreement) (the "Revenues").

9.      Mays Mining cannot share fifty percent (50%) of the Revenues with Nexgen and stay in business since its profit margin is much less than fifty percent (50%).

10.      Nexgen knew from the start that fifty percent (50%) of revenues would put Mays Mining out of business.

11.     What's more, prior to the signing of the Agreement, Rodney Mays, president of Mays Mining, was told by Andrew Mueller of Nexgen that the Agreement, as per its name, provided for the sharing of profits.  Furthermore, since then and very recently, at least two representatives of Nexgen have acknowledged that the Agreement should have been for net profits, rather than net revenues.

12.     Mr. Mays did not have counsel review the Agreement, nor the documents associated with the Transaction, since Nexgen, an investor in Mays Mining, provided counsel to draft both the documents for the Transaction and the Agreement.  Mr. Mays believed that Nexgen, as an investor, was working for the benefit of Mays Mining.

13.     By letter dated October 23, 2020, Nexgen demanded control over the business of Mays Mining.  Specifically, Mays Mining is anticipating payment of $1.9 million in connection with the assumption of certain reclamation liabilities by Mays Mining and the issuance of reclamation bonds by Endeavor.  Nexgen demanded that Mays Mining not utilize these funds without the express written consent of Nexgen.  A copy of the letter is attached as **<u>Exhibit B.</u>**

14.     Nexgen's demand is inappropriate for at least the following reasons:

    a.     the Agreement expressly states that Nexgen will have no managerial control over Mays Mining;

    b.     the Agreement expressly excludes any revenues generated by Endeavor or Endeavor Business (as directed by the Alabama Department of Insurance) from the purview of the Agreement, and the $1.9 million is thereby clearly excluded;

    c.     the Agreement (for numerous reasons set forth herein) cannot reach revenues;  and

d. the $1.9 million payment is not revenue but rather constitutes, and is reflected on the books of Mays Mining, as an assumption of liability.

15. In response to the letter dated October 23, 2020, Mays Mining proposed a way forward consistent with Nexgen's profession that the Agreement was meant to deal with profits, not revenues. Furthermore, in the response, Mays Mining offered to pay the maximum sum that it considered could be due and owing under the Agreement. Such proposal was rejected.

## COUNT I – FRAUD IN THE INDUCEMENT

16. Mays Mining hereby incorporates all allegations and averments of paragraphs 1 through 15.

17. At the time that Mays Mining entered into the Agreement, it was represented to Mr. Mays that the Agreement would be for a 50/50 sharing of profits, not revenues.

18. But for this fraudulent inducement, Mays Mining would not have entered into the Agreement.

WHEREFORE, PREMISES CONSIDERED, Mays Mining respectfully requests this Court to abrogate the Agreement or to rewrite it to be consistent with the parties' intent. Mays Mining prays for such further and other relief as this Court may deem appropriate.

## COUNT II – UNCONSCIONABILITY

19. Mays Mining hereby incorporates all allegations and averments of paragraphs 1 through 18.

20.     The sharing of revenues provision in the Agreement is one which "no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."  *See Lloyd v. Service Corp. of Ala.,* 453 So.2d 735, 739 (Ala. 1984).

21.     As such, the provision is unconscionable and is unenforceable.

WHEREFORE, PREMISES CONSIDERED, Mays Mining respectfully requests this Court to abrogate the Agreement or to rewrite it to be consistent with the parties' intent.  Mays Mining prays for such further and other relief as this Court may deem appropriate.

## COUNT III – REFORMATION OF AGREEMENT

22.     Mays Mining hereby incorporates all allegations and averments of paragraphs 1 through 21.

23.     Furthermore, the revenue sharing provision extends into perpetuity (another basis for unconscionability), which is evidence that the Agreement is meant to be one for a joint venture.

24.     The revenue sharing provision sets forth no requirement to repay the Investment, but rather only provides for a preferred return on the Investment and a sharing of revenues.

25.      The repayment of the Investment is also not mentioned in paragraph D of the recitals of the Agreement which provides (in pertinent part): "In accordance with this Agreement, in exchange for the Investment, Mays agrees to pay Nexgen a return on the Investment and 50% of any and all Revenue (as defined below).

26.     Notwithstanding that Nexgen has acknowledged that the intent of the parties was for profit sharing, and that there is no mention made of repaying the principal of the Investment, Nexgen has conveyed to Mays Mining that it intends to be repaid the principal portion of the Investment, along with a return thereon, and 50% of revenues into perpetuity.

27.     If Nexgen desires to be in a joint venture with Mays Mining, then the Agreement should be reformed to provide that, as a partner of Mays Mining, Nexgen is responsible for all liabilities of Mays Mining (both non-contingent and contingent).

28.     If the Court determines that the Agreement should not be abrogated in its entirety (which Mays Mining contends that it should), then Mays Mining requests the Court to reform the Agreement consistent with the parties' intent.

WHEREFORE, PREMISES CONSIDERED, Mays Mining respectfully requests this Court to abrogate the Agreement or to rewrite it to be consistent with the parties' intent.  Mays Mining prays for such further and other relief as this Court may deem appropriate.

### COUNT IV – VOID CONTRACT

29.     Mays Mining hereby incorporates all allegations and averments of paragraphs 1 through 28.

30.     Although Nexgen conducts business in the State of Alabama, Nexgen has not registered to do business with the Alabama Secretary of State.

31.     Specifically, Nexgen has invested in an Alabama company, has demanded control over the company, and has sought to exercise control over the Alabama company.

32.     Under Alabama Code Section 10A-2-10.52, the Agreement is void.

WHEREFORE, PREMISES CONSIDERED, Mays Mining respectfully requests this Court to abrogate and void the Agreement. Mays Mining prays for such further and other relief as this Court may deem appropriate.

/s/ *C. Ellis Brazeal III*
C. Ellis Brazeal III (BRA051)

**JONES WALKER LLP**
420 20th Street North, Suite 1100
Birmingham, AL  35203
T: (205) 244-5200
ebrazeal@joneswalker.com

***Attorney for Plaintiff Mays Mining, Inc.***

<u>**TO BE SERVED BY CERTIFIED MAIL -  RETURN RECEIPT REQUESTED**</u>

Nexgen Extractions, LLC
101 Chase Avenue, Suite 206
Lakewood, New Jersey 08701
Attention:  Isaac Abadi

ELECTRONICALLY FILED
10/24/2020 2:24 PM
64-CV-2020-900295.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

# Exhibit A

## RESTATED PROFIT PARTICIPATION AGREEMENT

**THIS RESTATED PROFIT PARTICIPATION AGREEMENT** (this "**Agreement**") is dated as of December 19, 2019 (the "**Effective Date**"), and entered into between Nexgen Extractions LLC, a New Jersey limited liability company ("**Nexgen**"), and Mays Mining, Inc., an Alabama corporation ("**Mays**"). Each of Nexgen and Mays are referred to individually as a "**Party**" and collectively as the "**Parties**."

A.      Pursuant to that certain Membership Interest Purchase Agreement dated December 19, 2019, by and among Brian A. Lewis and Jason E. Rudakas, collectively, as "Sellers," and Mays, as "Buyer" (the "**Yellowhammer Purchase Agreement**"), Mays acquired 100% of the membership interests of Yellowhammer Energy Solutions, LLC, an Alabama limited liability company (the "**Company**").

B.      The Company engages in (i) the mining, processing, transportation and sale of coal produced by the Company in the State of Alabama, (ii) the domestic trading of coal, including the purchase and resale of coal produced by others, and (iii) activities related to the foregoing and certain other operations.

C.      Subject to the approval of the Alabama Department of Insurance, pursuant to that certain Membership Interest Purchase Agreement by and among Brian A. Lewis, Jason E. Rudakas, Robert A. Lewis, and Thomas A. Lewis, collectively, as "Sellers," and Company, as "Buyer" (the "**Endeavor Purchase Agreement**"), Company shall indirectly acquire 100% of the shares of Endeavor Insurance Company, Inc., an Alabama corporation ("**Endeavor**"). Endeavor is a captive insurance company formed to transact business as a pure captive insurance company and engages in the sale of certain bonds and other products related to the mining of coal in the State of Alabama, and activities related to the foregoing (collectively, the "**Endeavor Business**").

D.      In accordance with this Agreement, in connection with the acquisition of the Company, Nexgen has agreed to provide Mays the amount of $2,536,776.20 (the "**Investment**") in exchange for a return on the Investment and 50% of any and all revenue received by Mays from any source whatsoever (the "**Business**").  In accordance with this Agreement, in exchange for the Investment, Mays agrees to pay Nexgen a return on the Investment and 50% of any and all Revenue (as defined below) received by Mays.

E.      The Parties entered into that certain Profit Participation Agreement dated as of December 19, 2019 ("**Original Agreement**"). The Parties acknowledge and agree that this Agreement shall amend, restate and supersede the Original Agreement in its entirety.

**NOW, THEREFORE,** in consideration of the foregoing, the mutual covenants contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

**1.**      **Term**.  The term of this Agreement ("**Term**") shall commence on the Effective Date and shall expire on the date that the Parties agree that Mays is no longer able to generate any Revenue.  For purposes of this Agreement, term "**Revenue**" shall mean any and all revenue

generated by Mays and/or any assets owned and/or controlled by Mays from any source whatsoever, but excluding any revenue generated by Endeavor or the Endeavor Business.

**2.** **Investment by Nexgen**. Concurrently with the execution of this Agreement, Nexgen agrees to deliver the Investment to Mays by wire transfer of immediately available federal funds of the United States. Mays shall utilize the Investment exclusively to fund the acquisition of the Company and Endeavor in accordance with the Yellowhammer Purchase Agreement and the Endeavor Purchase Agreement, as applicable. Mays has delivered to Nexgen true, correct and complete copies of both the Yellowhammer Purchase Agreement and the Endeavor Purchase Agreement. In no event shall Nexgen be required to provide Mays with any additional capital or other funds.

**3.** **Distributions**. In consideration of the payment of the Investment to Mays, Nexgen shall be entitled to a preferred return equal to 12% per annum on the Investment until cumulative distributions to Nexgen from the Revenue equal 100% of the amount of the Investment. Once cumulative distributions to Nexgen from the Revenue equal 100% of the amount of the Investment, then Nexgen and Mays shall share equally (50%/50%) any and all revenue received by Mays from any source whatsoever. The applicable amounts payable by Mays to Nexgen pursuant to this Agreement shall be referred to as the "**Nexgen Share**".

**4.** **Segregated Accounts**.

(a) Mays shall open and maintain separate bank accounts for the existing operations of Mays and the Company and deposit all funds paid to Mays and the Company in such separate bank accounts with a bank approved by the Parties ("**Lockbox Accounts**"). Each Party shall have online access to such bank accounts. Mays shall provide Nexgen on a monthly basis reasonable accounting records for the Business and any other reasonable business records with respect to the Business within two (2) business days upon notice of such request.

(b) Mays shall deposit all Revenue in the Lockbox Accounts. On the fifth (5th) day of each calendar month after the Effective Date (each, a "**Payment Date**"), the applicable Nexgen Share of the Revenue in the preceding month shall be swept into an account designated by Nexgen.

**5.** **Books and Records**. Mays shall keep and maintain complete and accurate books and records of all of its financial activities including, without limitation, any financial activity relating to Mays, the Company, Endeavor and the Business and all supporting documentation (collectively, "**Books and Records**"). Upon Nexgen's request, Mays shall permit Nexgen and its accountants and representatives to have access to, inspect, review and copy the Books and Records at Mays' office or at such other location where such Books and Records are maintained, and, upon Nexgen's request, Mays shall provide Nexgen with copies of all such Books and Records. If any such audit reveals an underpayment by Mays of amounts due under this Agreement, Mays shall pay to Nexgen such underpaid amount within ten (10) days of Nexgen's demand, and if such underpayment exceeds three percent (3%) of the amounts due to Nexgen during any period, Mays shall reimburse Nexgen for its costs and expenses incurred in connection with such inspection and review plus a ten percent (10%) administrative fee. If any such audit reveals an overpayment by Mays of amounts due under this Agreement, Nexgen may

retain such overpaid amounts, which shall be credited towards the amounts due to Nexgen on the next Payment Date.  The terms and provisions of this Section shall survive the expiration or earlier termination of this Agreement.

6. **Operation of the Business**.  Subject to the terms of this Agreement, Mays shall have sole and exclusive authority and control of the Business and the administration of all aspects of the Business and generation of the Revenue including, without limitation, the Endeavor Business.  Mays shall continuously operate the Business in accordance with all applicable laws and shall use its best efforts to maximize the Revenue.  At least once monthly or earlier upon Nexgen's request, Mays shall provide Nexgen with regular updates regarding the Business and supporting documentation, as requested by Nexgen.  Mays shall cause to be filed such instruments or certificates and amendments thereto and do such other acts as may be required by law to qualify and maintain Mays, the Company and Endeavor as a company licensed to operate in all states or jurisdictions in which such entities operate.  The Parties shall meet at least once each month after the Effective Date to discuss the operation of the Business.

7. **Intentionally Omitted**.

8. **Competition**.

(a) Mays shall devote as much time to the Business as may be reasonably required to conduct its business and affairs which such time shall maximize the Revenue of the Business. Except as provided below, nothing contained in this Agreement shall be construed to prohibit a Party or any affiliate of a Party from conducting or possessing an interest in any other business activities whatsoever, independently or with others.  Notwithstanding the foregoing, however, without the prior written approval of both Parties, each Party and its affiliates shall be prohibited from (a) owning, managing or developing a Business similar to the Business until the date two (2) years after the expiration of the Term, and (b) owning, receiving and/or controlling an interest (beneficial or otherwise) in an entity that owns, manages or develops a business similar to the Business until the date two (2) years after the expiration of the Term.  The restrictions on each Party and the affiliates of each Party in this Section against competing with a business similar to the Business of the Company shall apply solely to the State of Alabama.

(b) Subject to the terms of this Section, each Party acknowledges that the restrictions on competition and the geographical restrictions set forth in Section 8(a) above, in view of the unique nature of the Business, are reasonable and necessary to protect the legitimate interests of the Investment and each Party and that any violation thereof would result in irreparable injuries to each Party.  Therefore, each Member expressly agrees that, in the event of the violation of any of the restrictions set forth in Section 8(a) above, each Party shall be entitled to obtain from any court of competent jurisdiction, preliminary and injunctive relief, in addition to any other rights or remedies to which they may be entitled at law or in equity, against the violating Party. Each Party has carefully read, considered and had the opportunity to contact an attorney concerning the provisions of this Section and, each having done so, agrees that the restrictions set forth in this Section are fair and reasonable and are reasonably required for the protection of the interests of the Parties.  Notwithstanding the foregoing, if any part of the restrictions set forth in this Section shall be held to be invalid or unenforceable, the remaining parts thereof shall nevertheless continue to be valid and enforceable as though the invalid or

3

unenforceable parts had not been included therein.  In the event that any provision of this Section relating to time period or scope of restriction shall be declared by a court of competent jurisdiction to exceed the maximum time period or scope such court deems reasonable and enforceable, said time period or scope of restriction shall be deemed to become and thereafter be the maximum time period or scope which such court deems reasonable and enforceable.

**9.**     **Confidentiality**. The Parties agree to keep confidential all aspects of this Agreement and the Business, and shall not disclose to any person other than the members, managers, partners, employees, officers, advisors, attorneys or accountants of the Parties (collectively, "**Representatives**") on a need-to-know basis, any confidential or proprietary information or data concerning this Agreement, the Business, dealings or finances of the other Party furnished directly or indirectly by such other Party.  As used in this Section, the term "confidential information" does not include any information which:  (a) at the time of disclosure is generally available to and known by the public (other than as a result of a disclosure directly or indirectly by either Party or their Representatives); (b) was available to either Party on a non-confidential basis from a source other than a Party or its Representatives; or (c) is required by law to be disclosed.

**10.**     **Representations**.

(a)     Each Party represents and warrants to the other Party as follows: (i) it has full power, authority and legal right to execute, deliver and perform all obligations under this Agreement; (ii) this Agreement constitutes legal, valid and binding obligations, enforceable in accordance with its terms; and (iii) the execution, delivery and performance of the obligations under this Agreement will not violate, conflict with or result in a default under any agreement or other instrument to which it is a party.

(b)     Mays represents and warrants to Nexgen that (i) to the best of its knowledge and to the best knowledge of Guarantor (as defined below), all statements, analyses and any other documents provided by or on behalf of Mays to Nexgen prior to the execution of this Agreement including, without limitation, the Business analysis attached to this Agreement as Exhibit A, are true, correct and complete; (ii) Mays is the sole owner of the Company and Endeavor; (iii) no consent, approval, authorization, registration, or filing with, any federal, state or local governmental authority is required on the part of Mays to conduct the Business; (iv) Mays has all permits, licenses and any authority necessary for the conduct of the Business and is not in default in any material respect under any of such permits, licenses or other similar authority; and (v) Mays is not in violation or default of in any material respect under any lease, agreement, permit, license, or contract to which it is a party.

**11.**     **Late Payment**. If Nexgen does not receive any portion of the Nexgen Share of Revenue within three (3) days after the applicable Payment Date, Mays shall pay Nexgen a late payment charge equal to ten percent (10%) of the delinquent payment.  The Parties agree that such amounts represent a fair and reasonable estimate of the damages Nexgen will incur by reason of such late payment and Nexgen's right to such compensation for the delinquency is in addition to all of Nexgen's other rights and remedies under this Agreement, at law or in equity.

**12.** __Indemnification__. Mays shall protect, defend (with counsel designated by Nexgen), indemnify and hold harmless Nexgen and its shareholders, members, managers, partners, officers, owners, officers, directors, employees, agents, representatives, and their respective agents, executors, heirs, representatives and assigns, from and against any claims, losses, costs, penalties, damages, charges and/or expenses (including reasonable attorneys' and consultants' fees) imposed or resulting from, arising out of or attributable in whole or in part to: (i) the execution and delivery of this Agreement; (ii) any breach of this Agreement; (iii) any misrepresentation of Mays' representations set forth in this Agreement; and/or (iv) the operation of the Business. The terms and provisions of this Section shall survive the expiration of the Term or earlier termination of this Agreement.

**13.** __Specific Performance__. Each Party acknowledges and agrees that the terms of this Agreement are unique, that in the event of a default by a Party of its obligations under this Agreement, the other Party would suffer injury for which it would not be fully compensated with monetary damages and accordingly, in the event of a default by a Party of its obligations under this Agreement, the other Party shall be entitled to specifically enforce the terms, covenants and conditions of this Agreement or any part hereof in addition to any and all other remedies available to a Party at law or in equity.  Accordingly, if any Party enters into any action or proceeding to enforce the provisions of this Agreement, the Party against whom the action or proceeding is brought waives the claim or defense that the moving Party has or shall have an adequate remedy at law, and such Party shall not urge in the action or proceeding the claim or defense that an adequate remedy at law exists.  All remedies, either under this Agreement or by law or otherwise afforded to any Party, shall be cumulative and not alternative.

**14.** __Attorneys' Fees__. Upon the Nexgen's demand, Mays shall reimburse Nexgen for all costs and expenses, including attorneys, accountants, consultants, and expert witness fees and costs, which are incurred by the Nexgen in connection with the enforcement of this Agreement, whether or not any legal proceedings are instituted. Further, if either Party hereto fails to perform any of its obligations under this Agreement or if a dispute arises between the Parties hereto concerning the meaning or enforcement of any provision of this Agreement, then the defaulting Party or the Party not prevailing in such dispute shall pay any and all costs and expenses incurred by the prevailing Party on account of such dispute and/or in enforcing or establishing its rights hereunder, including, without limitation, court costs and attorneys' fees and disbursements.  The phrase "prevailing Party" as used in this Section shall mean the Party who receives substantially the relief desired whether by dismissal, summary judgment or otherwise.  The terms and provisions of this Section shall survive the expiration of the Term or termination of this Agreement.

**15.** __Notices__.  All notices, demands and consents of any kind which any Party may be required or may desire to give or serve upon another shall be made in writing and shall be delivered by personal service, overnight courier or sent by email to the address of that Party set forth below.  Any such notice sent shall be deemed to have been received by the addressee upon receipt. A Party may change his address by giving the other Party written notice of its new address as provided in this Section.

Nexgen:          Nexgen Extractions LLC
                 101 Chase Ave., Suite 206

Lakewood, New Jersey 08701
Attention: Isaac Abadi
Email: iabadi@nexgencapital.com

with copies to (which shall not constitute notice):

Maynard Cooper & Gale
1901 Sixth Avenue North
Regions Harbert Plaza, Suite 2400
Birmingham, AL 35203
Attention:  Jim McLaughlin
Email:  JMcLaughlin@maynardcooper.com

Mays:        Mays Mining, Inc.
72 Longview Dr.
Jasper, AL 35504
Attention: Rodney L. Mays
Email: maysrodney@yahoo.com

**16.**    <u>**No Partnership or Joint Venture**</u>.  Nothing contained in this Agreement shall be deemed or construed to create the relationship of principal and agent, or partnership, or joint venturer, or any other relationship between the Parties other than as Parties to this Agreement. Further, nothing contained in this Agreement shall be construed to mean that Nexgen is a joint venturer or partner in connection with the Business.

**17.**    <u>**Governing Law; Jurisdiction and Venue**</u>. This Agreement shall be governed by the laws of the State of Alabama.  The Parties agree that any suit, action or proceeding arising out of or related to this Agreement shall be brought only in the applicable Federal or State Court in Birmingham, Alabama. To the fullest extent permissible by law, the Parties consent to the personal jurisdiction, venue and forum of such courts.

**18.**    <u>**Successors and Assigns**</u>.  This Agreement shall be binding upon the successors and assigns of the Parties hereto; provided, however, in no event shall Mays assign this Agreement to any third party without the prior written consent of Nexgen (in its sole discretion). Any attempted transfer or assignment in violation of this Section shall be void.

**19.**    <u>**Entire Agreement; Amendments**</u>.    This Agreement contains the entire agreement between the Parties hereto with respect to the subject matter hereof.    All representations, promises and prior or contemporaneous undertakings between the Parties are merged into and expressed in this Agreement, and any and all prior agreements between such Parties are hereby canceled.  This Agreement shall not be amended, modified, or supplemented except by a written agreement duly executed by the Parties.

**20.**    <u>**Time of the Essence**</u>.  Time is of the essence in the performance of each of the Parties' respective obligations contained in this Agreement.

**21.**   **Severability**.   In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of this Agreement, which shall remain in full force and effect and enforceable in accordance with its terms.

**22.**   **Further Assurances**. Each Party agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

**23.**   **Advice of Counsel**.  Each Party agrees and represents that it (a) has had advice of counsel of its choosing or had the opportunity of obtaining advice of counsel, in the negotiation and the preparation of this Agreement, (b) has read this Agreement, and (c) is fully aware of the contents and legal effect of this Agreement.

**24.**   **Counterparts**. This Agreement may be executed in counterparts, all of which shall constitute the same Agreement, notwithstanding that all parties to this Agreement are not signatory to the same or original counterpart.  Delivery of an executed counterpart of this Agreement by facsimile or email shall be equally as effective as delivery of an original executed counterpart.  Signature pages may be detached from the counterparts and attached to a single copy of this Agreement to physically form one (1) document.

(Signature Page Follows Immediately)

**IN WITNESS WHEREOF,** the Parties have duly executed and delivered this Agreement as of the Effective Date.

**"NEXGEN":**                                    **"MAYS":**

Nexgen Extractions LLC,                          Mays Mining, Inc.,
a New Jersey limited liability company           an Alabama corporation

By: _____                     By: _____
    Isaac Abadi, its Manager                     Rodney L. Mays,
                       its President and Secretary

[SIGNATURE PAGE TO RESTATED PROFIT PARTICIPATION AGREEMENT]

**IN WITNESS WHEREOF**, the Parties have duly executed and delivered this Agreement as of the Effective Date.

**"NEXGEN"**:                                    **"MAYS"**:

Nexgen Extractions LLC,                    Mays Mining, Inc.,
a New Jersey limited liability company     an Alabama corporation

By: _____      By: _____
     Isaac Abadi, its Manager                 Rodney L. Mays,
                                             its President and Secretary

[SIGNATURE PAGE TO RESTATED PROFIT PARTICIPATION AGREEMENT]

## **Exhibit A**

**(Business Analysis)**

[To Be Attached]

ELECTRONICALLY FILED
10/24/2020 2:24 PM
64-CV-2020-900295.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

# Exhibit B

October 22, 2020

Rodney Mays
President, Mays Mining, Inc.
rmays@maysmining.com

Re:     **No Disbursement of Funds**

Dear Rodney:

This Letter Agreement is entered into in connection with that certain Restated Profit Participation Agreement by and between Mays Mining, Inc. ("Mays Mining") and Nexgen Extractions LLC ("Nexgen"), dated December 19, 2019 (the "RPPA").  It is our understanding that Mays Mining expects to receive funds (the "Funds"), in the coming days or weeks, from Centennial Natural Resources, LLC ("Centennial") in connection with the replacement of certain reclamation bonds.  The amount of the Funds is estimated to be $1,900,000.  By signing this Letter Agreement, you agree not to, and will cause Mays Mining and its affiliates not to, use, spend, distribute or otherwise disburse any amount of the Funds without receiving the express written consent of Nexgen, or until Mays Mining and Nexgen have entered into a written agreement regarding your compliance with the RPPA.  You further agree to deposit the Funds in a separate account and to not commingle the Funds with any other funds of yours, Mays Mining or any of your affiliates.  In consideration therefore, so long as you and Mays Mining are in compliance with this Letter Agreement and working in good faith to comply with the RPPA, Nexgen agrees not to pursue litigation to enforce its rights under the RPPA.

Please acknowledge your understanding of, and agreement with, the foregoing by signing this Letter Agreement in the space provided below.

Isaac Abadi
Manager of Nexgen Extractions LLC

Date:  10-23-2020

**Acknowledged and Agreed:**

Rodney L. Mays, on behalf of himself and as
President of Mays Mining, Inc.

Date:

05621458.1



AlaFile E-Notice

64-CV-2020-900295.00

To:   CLYDE ELLIS BRAZEAL III
ebrazeal@joneswalker.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

MAYS MINING, INC. V. NEXGEN EXTRACTIONS, LLC
64-CV-2020-900295.00

The following complaint was FILED on 10/24/2020 2:24:04 PM

Notice Date:     10/24/2020 2:24:04 PM

SUSAN ODOM
CIRCUIT COURT CLERK
WALKER COUNTY, ALABAMA
1803 3RD AVE
SUITE 205
JASPER, AL, 35501

205-384-7268



AlaFile E-Notice

64-CV-2020-900295.00

To: NEXGEN EXTRACTIONS, LLC
ATTN: ISAAC ABADI
101 CHASE AVE., STE 206
LAKEWOOD, NJ, 08701

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

MAYS MINING, INC. V. NEXGEN EXTRACTIONS, LLC
64-CV-2020-900295.00

The following complaint was FILED on 10/24/2020 2:24:04 PM

Notice Date:     10/24/2020 2:24:04 PM

SUSAN ODOM
CIRCUIT COURT CLERK
WALKER COUNTY, ALABAMA
1803 3RD AVE
SUITE 205
JASPER, AL, 35501

205-384-7268

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>64-CV-2020-900295.00 |
| --- | --- | --- |

**IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA**
**MAYS MINING, INC. V. NEXGEN EXTRACTIONS, LLC**

**NOTICE TO:** NEXGEN EXTRACTIONS, LLC, ATTN: ISAAC ABADI 101 CHASE AVE., STE 206, LAKEWOOD, NJ 08701

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), CLYDE ELLIS BRAZEAL III

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: 420 20TH STREET NORTH, SUITE 1100, BIRMINGHAM, AL 35203

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of MAYS MINING, INC. pursuant to the Alabama Rules of the Civil Procedure.

*[Name(s)]*

| 10/24/2020 | /s/ SUSAN ODOM | By: |
| --- | --- | --- |
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.        /s/ CLYDE ELLIS BRAZEAL III

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____ in _____ County,

*(Name of Person Served)*          *(Name of County)*

Alabama on _____ .

*(Date)*

_____          _____          _____
*(Type of Process Server)*     *(Server's Signature)*          *(Address of Server)*

_____          _____
*(Server's Printed Name)*          *(Phone Number of Server)*

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

| Certified Mail Fee | | |
|---|---|---|
| $ D001 | | |

Extra Services & Fees *(check box, add fee as appropriate)*

☐ Return Receipt (hardcopy)              $ _____
☐ Return Receipt (electronic)            $ _____
☐ Certified Mail Restricted Delivery     $ _____
☐ Adult Signature Required               $ _____
☐ Adult Signature Restricted Delivery    $ _____

Postmark
Here

Postage

$

Total Postage and Fees

$ 8.20

Sent To   NexGen Extractions

Street and Apt. No., or PO Box No.   2020-900295

City, State, ZIP+4®   C V ~~2020~~

7020 1810 0000 7771 5134

7020 1810 0000 7771 5134

7020 1810 0000 7771 5155

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

CERTIFIED MAIL®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

0001

NEXGEN EXTRACTIONS, LLC

ATTN: ISAAC ABADI

101 CHASE AVE., STE 206

LAKEWOOD, NJ 08701



9590 9402 6078 0125 0498 79

2. Article Number (Transfer from service label)

7020 1810 0000 7771 5134

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

CV 2020 - 900295

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee | |
| $ | Dool |

**Extra Services & Fees** *(check box, add fee as appropriate)*

☐ Return Receipt (hardcopy)   $ _____
☐ Return Receipt (electronic)   $ _____
☐ Certified Mail Restricted Delivery   $ _____
☐ Adult Signature Required   $ _____
☐ Adult Signature Restricted Delivery   $ _____

Postmark Here

OCT 28 35501

Postage

$

Total Postage and Fees

$   8.20

LLC

Sent To   NexGen Extractions

Street and Apt. No., or PO Box No.

City, State, ZIP+4®   CV   ~~2020~~   2020-900295

**PS Form 3800, April 2015** PSN 7530-02-000-9047    See Reverse for Instructions

7171 7771 0000 0000 0181 0020 2027

ELECTRONICALLY FILED
10/30/2020 10:31 AM
64-CV-2020-900295.00
CIRCUIT COURT OF
WALKER COUNTY, ALABAMA
SUSAN ODOM, CLERK

## IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

| | | |
|---|---|---|
| **MAYS MINING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| | ) | **64-CV-2020-900295** |
| **v.** | ) | |
| | ) | |
| **NEXGEN EXTRACTIONS, LLC,** | ) | |
| | ) | |
| **Defendant.** | | |

## NOTICE OF APPEARANCE

Daniel J. Martin submits this Notice of Appearance as additional counsel for Plaintiff Mays Mining, Inc. and requests that he receive a copy of all notices and pleadings in this action.

Dated this 30th day of October, 2020.

*/s/Daniel J. Martin*
Daniel J. Martin (MAR197)
**JONES WALKER LLP**
420 20th Street North
Suite 1100
Birmingham, Alabama  35203
Telephone: (205) 244-5200
Email:  danielmartin@joneswalker.com

**ATTORNEY FOR PLAINTIFF**

{BH453834.1}

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 30th day of October, 2020, the foregoing was electronically filed with the Clerk of the Court using the Alafile system, and a copy was placed in the U.S. Mail to the foregoing:

Nexgen Extractions, LLC
101 Chase Avenue, Suite 206
Lakewood, New Jersey
Attention: Isaac Abadi


*/s/ Daniel J. Martin* _____
OF COUNSEL



AlaFile E-Notice

64-CV-2020-900295.00

To:  DANIEL J MARTIN ESQ.
danielmartin@joneswalker.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

MAYS MINING, INC. V. NEXGEN EXTRACTIONS, LLC
64-CV-2020-900295.00

The following NOTICE OF APPEARANCE was FILED on 10/30/2020 10:33:38 AM

Notice Date:     10/30/2020 10:33:38 AM

SUSAN ODOM
CIRCUIT COURT CLERK
WALKER COUNTY, ALABAMA
1803 3RD AVE
SUITE 205
JASPER, AL, 35501

205-384-7268



AlaFile E-Notice

64-CV-2020-900295.00

To:  NEXGEN EXTRACTIONS, LLC (PRO SE)
ATTN: ISAAC ABADI
101 CHASE AVE., STE 206
LAKEWOOD, NJ, 08701-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

MAYS MINING, INC. V. NEXGEN EXTRACTIONS, LLC
64-CV-2020-900295.00

The following NOTICE OF APPEARANCE was FILED on 10/30/2020 10:33:38 AM

Notice Date:     10/30/2020 10:33:38 AM

SUSAN ODOM
CIRCUIT COURT CLERK
WALKER COUNTY, ALABAMA
1803 3RD AVE
SUITE 205
JASPER, AL, 35501

205-384-7268



AlaFile E-Notice

64-CV-2020-900295.00

To:  BRAZEAL CLYDE ELLIS III
ebrazeal@joneswalker.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

MAYS MINING, INC. V. NEXGEN EXTRACTIONS, LLC
64-CV-2020-900295.00

The following NOTICE OF APPEARANCE was FILED on 10/30/2020 10:33:38 AM

Notice Date:     10/30/2020 10:33:38 AM

SUSAN ODOM
CIRCUIT COURT CLERK
WALKER COUNTY, ALABAMA
1803 3RD AVE
SUITE 205
JASPER, AL, 35501

205-384-7268