# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **MAYS MINING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | CASE NO. |
| | ) | |
| v. | ) | 20-cv-01723-GMB |
| | ) | |
| **NEXGEN EXTRACTIONS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AMENDMENT TO COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), the Plaintiff, MAYS MINING, INC., files this Amendment to Complaint and states as follows:

1. Mays Mining dismisses Count IV of its original complaint, but reserves the right to raise Ala. Code Section 10A-1-7.22 should Nexgen file a claim or counterclaim that its barred by it. Otherwise, this Amendment to Complaint merely amends, and does not supplant, the allegations of the original Complaint, which allegations are incorporated herein fully. The following factual and legal allegations are added:

### Representations as to Sharing of Profits

2. Prior to the execution of the Restated Profit Sharing Agreement ("Agreement"), Andrew Mueller of Nexgen told Rodney Mays that the deal between

{BH458982.1}

the parties (to fund the purchase of Yellowhammer by Mays Mining) involved a sharing of profits.

3. Mr. Mueller indicated that it, like the Quality deal, called for a sharing of profits. The Quality deal involved a transaction between Nexgen and another of Mr. Mays' companies, Quality Coal Co., Inc., which provided for the sharing of profits between Quality Coal and Nexgen under certain conditions.

4. After the Restated Profit Sharing Agreement was executed, Andrew Mueller traveled to meet with Mays Mining in its office in Jasper, Alabama. At that meeting on February 19, 2020, Eric Hallmark, Chief Financial Officer of Mays Mining, Inc., was informed by Mr. Mueller that the intent of the parties was for them to share profits under the Agreement, and Mueller requested input from Mr. Hallmark on his ideas to structure the repayment.

5. During October, 2020, Aaron Abadi of Nexgen traveled to Jasper, Alabama, and met with Mr. Mays and Mr. Hallmark on several occasions.

6. During his multi-day trip to Jasper, Aaron Abadi met with Mr. Hallmark and Mr. Mays on October 6, 2020, in Jasper and told them that the intent of the parties under the Agreement was to share profits.

7. Then on October 22, 2020, a third representative of Nexgen, Isaac Abadi, confirmed on a phone call with Mr. Mays and Mr. Hallmark that the sharing

of cash collections was not the intention of the transaction, but rather the sharing of profits.

8. In other words, to be clear, there have been at least four separate representations by three different representatives of Nexgen to a representative of Mays Mining that the Agreement which is entitled "Restated Profit Sharing Agreement," was meant to do just that - - share profits - - not share revenues.

9. Further, during his several-day trip to Jasper, Mr. Aaron Abadi told Mr. Hallmark and Mr. Mays while in Jasper that he wanted to learn the business and that <u>every</u> payment by Mays Mining would have to be approved by him. This was confirmed by the email attached as **Exhibit C**.

10. Indeed, a sharing of revenues, rather than profits, would be unconscionable. No rational person would agree to it, nor would any person acting in good faith request him to do so.

11. Furthermore, the Restated Profit Sharing Agreement contains no schedule or formula for any repayment of the investment (as defined therein).

12. When Mays Mining inquired as to whether and how the investment was to be repaid, Nexgen provided a repayment schedule per the email attached as **Exhibit D**.

13. The purported repayment schedule is based upon a certain price per ton of coal. This scheme or formula for repayment is not mentioned or referenced in the

Restated Profit Sharing Agreement. However, even more notably, this repayment schedule recites a 50/50 sharing of "profits," not revenues—confirming in writing the prior verbal representations. *See* Exhibit D, p. 7 and enlarged on p. 8.

## **Reformation of Contract**

14. As set forth above, there were at least five occasions (four verbal and one in writing) when Nexgen admitted that the intent of the parties was to share profits, not revenues.

15. Accordingly, the Agreement reflects a mutual mistake and should be reformed.

16. The Agreement should also be reformed even if there was only a unilateral mistake on the part of Mays Mining.

17. The statements by Nexgen constitute fraud, an admission of inequitable conduct, and reflect that Nexgen was aware that Mays Mining would be mistaken in entering into the contract.

18. Furthermore, Nexgen could not help but believe that Mays Mining was mistaken since Mays Mining could not survive by sharing fifty percent of its revenues. Nexgen had reviewed the financial situation of Mays Mining prior to executing the Agreement and knew this to be the case.

*/s/ C. Ellis Brazeal III*
C. ELLIS BRAZEAL III (ASB-1028-R73C)
***Attorney for Plaintiff Mays Mining, Inc.***

OF COUNSEL:
**JONES WALKER, LLP**
One Federal Place
420 20th Street North, Suite 1100
Birmingham, Alabama 35203
T: (205) 244-5237 | F: (205) 244-5400
ebrazeal@joneswalker.com

## **CERTIFICATE OF SERVICE**

 I hereby certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the parties set forth in the Electronic Mail Notice List as of the date hereof.

          */s/ C. Ellis Brazeal III*
          OF COUNSEL