FILED

2021 May-26  AM 11:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| MAYS MINING, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 6:20-cv-1723-GMB |
| | ) | |
| NEXGEN EXTRACTIONS, LLC, | ) | |
| | ) | |
| Defendant/Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RODNEY L. MAYS, *et al.*, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are several motions filed by Defendant/Counterclaimant

Nexgen Extractions, LLC ("Nexgen") and Counterclaim Defendant Rodney Mays.

First, Nexgen filed a Motion to Dismiss Plaintiff/Counterclaim Defendant Mays

Mining, Inc.'s ("Mays Mining") claims for fraud in the inducement and reformation.

Doc. 10.  Second, Rodney Mays filed a Motion for a More Definite Statement or to

Dismiss Nexgen's counterclaim. Doc. 26.  Third, Nexgen filed a Motion to Strike

three of Mays Mining and Counterclaim Defendant Quality Coal Co., Inc.'s

("Quality Coal") affirmative defenses asserted in their answer to Nexgen's

counterclaim. Doc. 34.  The two motions to dismiss are fully briefed and ripe for

decision. Docs. 10, 15, 16, 21, 22, 26, 31 & 33.  The motion to strike has not been fully briefed but is still ripe for decision for the reasons discussed below.  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Docs. 13 & 36.

## I.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice, *Iqbal*, 556 U.S. at 678.

## II.  FACTUAL BACKGROUND

In December 2019, Mays Mining purchased the membership interests of another company. Doc. 20 at 2.  Nexgen advanced $2.5 million to Mays Mining for this purchase pursuant to a Restated Profit Participation Agreement ("the Agreement") (Doc. 20-1), which became effective on December 19, 2019. Doc. 20 at 2–3.  Mays Mining alleges that the parties intended to share the profits from the transaction equally. Doc. 20 at 5–6.  But as Mays Mining concedes, the Agreement instead provides for the parties to share revenue. Doc. 20 at 3.

Nexgen's counsel drafted the documents associated with the transaction, including the Agreement itself. Doc. 20 at 3–4.  Mays Mining did not have its own counsel review the Agreement or the documents associated with the transaction but claims that Andrew Muller[1] of Nexgen told Mays Mining's President Rodney Mays before the signing of the Agreement that it provided for the parties to share profits. Doc. 20 at 3.  And Muller compared the Agreement to a deal between Nexgen and Quality Coal, another company owned by Rodney Mays, where the parties agreed to share profits. Doc. 20 at 5.

After the parties signed the Agreement, Muller met with Mays Mining executives including Chief Financial Officer Eric Hallmark on February 19, 2020,

---

[1] Mays spells Andrew Muller's surname "Mueller" throughout its pleadings, but Nexgen has clarified that his name is spelled "Muller." Doc. 10 at 7.

and again described the Agreement as a profit-sharing arrangement. Doc. 20 at 5.

Aaron Abadi of Nexgen met with Mays Mining executives on October 6 and told

them that the parties' intent was for the Agreement to provide for profit sharing.

Doc. 20 at 6. Mays Mining also claims that at least two other Nexgen representatives

have since acknowledged that the Agreement should have split profits instead of

revenue. Doc. 20 at 3.

## III. DISCUSSION

### A.    Nexgen's Motion to Dismiss

Nexgen seeks to dismiss Mays Mining's claims for fraud in the inducement

(Count I) and reformation (Count III). Doc. 21 at 1. The court will address each

claim in turn.

#### 1.    *Fraud in the Inducement*

"Fraud in the inducement consists of one party's misrepresenting a material

fact concerning the subject matter of the underlying transaction and the other party's

relying on the misrepresentation to his, her, or its detriment in executing a document

or taking a course of action." *Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d

454, 459 (Ala. 2000) (emphasis omitted). In Alabama, "a plaintiff must prove that

he or she reasonably relied on the defendant's misrepresentation in order to recover

damages for fraud." *AmerUs Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1207 (Ala. 2008).

Under this reasonable-reliance standard, "the trial court can enter a judgment as a

matter of law in a fraud case where the undisputed evidence indicates that the party

or parties claiming fraud in a particular transaction were fully capable of reading and

understanding their documents, but nonetheless made a deliberate decision to ignore

written contract terms." *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala.

1997).

Taking Mays Mining's allegations as true, Nexgen representatives told Mays

Mining on multiple occasions that the Agreement provides for profit sharing, when

in fact the Agreement provides for revenue sharing. Doc. 20 at 3–6.  Mays Mining

alleges that it relied on these representations when entering the contract and that it

will not be able to stay in business if the contract is enforced as written. Doc. 20 at

3–6.  Therefore, Mays Mining has recited the basic elements of a claim for fraud in

the inducement.  The only remaining question at the Rule 12(b)(6) stage is whether

Mays Mining's reliance on Nexgen's representations could have been reasonable.

Mays Mining argues that its reliance was reasonable because the title of the

Agreement is "Restated Profit Participation Agreement," not "Restated Revenue

Participation Agreement." Doc. 15 at 5.  However, titles and headings do not alter

the material terms of a contract, *David Lee Boykin Family Trust v. Boykin*, 661 So.

2d 245, 249 (Ala. Civ. App. 1995), and multiple portions of the Agreement explicitly

provide for equal sharing of revenue, not profits. *See* Doc. 20-1 at 2, 3 & 5.  In fact,

the word "profit" appears only in the title of the Agreement and in one reference to

the original Profit Participation Agreement. *See* Doc. 20-1 at 2 & 9.  The court finds

that any reliance on the title of the Agreement was unreasonable in light of the clear

and unambiguous terms of the Agreement repeatedly indicating that the parties

would share revenue.  This is especially true where there is no allegation that Mays

Mining's representatives were unable to read and write or otherwise were

unsophisticated. *See, e.g.*, *AmerUs Life*, 5 So. 3d at 1209–10 (surveying Alabama

Supreme Court decisions rejecting fraud claims for unreasonable reliance).

Mays Mining also points to a spreadsheet created by Nexgen that references

"Principal balance outstanding 50% of net profits (*estimated*)." Doc. 20-4 at 9.  But

the spreadsheet was attached to an email Muller sent on October 16, 2020, almost

ten months after the Agreement went into effect. Doc. 15 at 6–7.  Because Mays

Mining received this email long after the parties signed the Agreement, it could not

have relied on any representations in the email when entering into the Agreement.

Therefore, this reference to profit sharing is inapposite to the question of reasonable

reliance.

Finally, Mays Mining argues that it did not have independent counsel to

review the Agreement. Doc. 20 at 3.  But regardless of whether Mays Mining sought

counsel, the facts here fit squarely within the archetypal unreasonable reliance

described in *Foremost* and its progeny: a party capable of reading and understanding

a document does not bother to do so and instead relies on representations made by

another party. *See, e.g.*, *Foremost*, 693 So. 2d at 422 (finding insureds who had a high school education unreasonably relied on sales representative's representation that contradicted sales documents the insureds did not read); *Alfa Life Ins. Co. v. Green*, 881 So. 2d 987, 992–93 (Ala. 2003) (finding insureds who had a high school education unreasonably relied on insurance agent's repeated representations that contradicted a premium schedule).

While the parties did not raise this issue, the court also has considered whether Mays Mining's allegations fall within an exception to the reasonable-reliance standard recognized by the Alabama Supreme Court. *See AmerUs Life*, 5 So. 2d at 1209–10 (describing *Potter v. First Real Estate Co.*, 844 So. 2d 540 (Ala. 2002), as the one exception to the reasonable-reliance standard).  In *Potter*, 844 So. 2d at 553, a real estate agent told a purchaser that she represented him "as much as she represented the seller."  The Alabama Supreme Court held that this statement created a special relationship between the agent and the purchaser such that the agent could be liable to the purchaser for fraud. *Id.*  In the instant case, Mays Mining has not alleged that Nexgen made representations sufficient to create a special relationship between the two parties.  Mays Mining has alleged only that it "did not have counsel review the Agreement . . . since Nexgen, an investor in Mays Mining, provided counsel to draft . . . the Agreement [and] Mr. Mays believed that Nexgen, as an investor, was working for the benefit of Mays Mining." Doc. 20 at 3–4.  Mays

Mining's assumptions notwithstanding, the complaint does not articulate any statements made by Nexgen's employees or attorneys suggesting that they were acting for Mays Mining's benefit.

Accordingly, Mays Mining's reliance on Nexgen's oral representations as to the nature of the Agreement was unreasonable in light of the Agreement's unambiguous terms, which Mays Mining's representatives did not read. Therefore, Nexgen's Motion to Dismiss is due to be granted as it relates to Count I.

However, where a more carefully drafted complaint might state a viable claim, a district court should give the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Here, the court finds it appropriate to allow Mays Mining an opportunity to amend its complaint to attempt to state a proper claim for fraud in the inducement.

### *2.    Reformation*

In Count III, Mays Mining asks the court to rewrite the agreement to reflect the parties' intent to share profits, not revenue. Doc. 15 at 8. "When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court . . . ." Ala. Code § 8-1-2. As discussed above, however, Mays Mining has not stated a claim for fraud that survives Rule 12(b)(6)

scrutiny.  Therefore, it can seek reformation only by alleging a mutual or unilateral

mistake in the formation of the Agreement.

A mutual mistake is a "mutual misunderstanding concerning a basic

assumption on which the contract was made." *Har-Mar Collisions, Inc. v. Scottsdale*

*Ins. Co.*, 212 So. 3d 892, 899 (Ala. 2016) (quoting *Restatement (Second) of*

*Contracts* § 152 (1981)).  Mays Mining claims that it intended for the Agreement to

split profits, and it alleges that Nexgen representatives stated—both before and after

the parties signed the Agreement—that they also intended for the Agreement to split

profits. Doc. 20 at 3, 5 & 6.  Thus, Mays Mining alleges that the parties made a

mutual mistake by believing that the Agreement provided for the sharing of profits,

not revenue. Doc. 20 at 7.  This mutual-mistake theory for reformation satisfies

Alabama Code § 8-1-2 and survives Nexgen's motion to dismiss.

Alternatively, Mays Mining alleges that it made a unilateral mistake and that

Nexgen was aware of its mistake. Doc. 20 at 7.  However, the Agreement, signed by

Mays Mining's president, states, "Each Party agrees and represents that it . . . has

read this Agreement, and . . . is fully aware of the contents and legal effects of this

Agreement." Doc. 20-1 at 8.  By signing the Agreement, Mays Mining's president

was on notice of its terms and represented to Nexgen that it agreed with the terms.

*See Am. Homes & Land Corp. v. C.A. Murren & Sons Co.*, 990 So. 2d 871, 878 (Ala.

2008).  Therefore, Mays Mining has not alleged a unilateral mistake that Nexgen

knew or suspected Mays Mining to be making. *See id.*

The court therefore finds that Mays Mining has stated a claim for reformation of the Agreement under Alabama Code § 8-1-2, but only on the theory of a mutual mistake.  To the extent Mays Mining seeks reformation on the basis of a mutual mistake, Nexgen's Motion to Dismiss is due to be denied as it relates to Count III.

## B.      Remaining Motions

First, Rodney Mays has indicated in his reply brief that he wished to withdraw his Motion for a More Definite Statement or to Dismiss. Doc. 33 at 2.  Accordingly, the motion is due to be denied.

Second, in its Motion to Strike, Nexgen seeks to strike the affirmative defenses of fraud, fraud in the inducement, and mutual mistake that Mays Mining has asserted in its counterclaim answer based on the same grounds Nexgen articulated in its motion to dismiss the fraud and mutual mistake claims in Mays Mining's complaint.  Because Nexgen's motions are parallel and the facts articulated by Mays Mining in its complaint and its counterclaim answer are nearly identical, *compare* Doc. 20 at 3–8, *with* Doc. 28 at 13–18, the court will decide both motions at this time.  As discussed above, Mays Mining has not shown that its reliance on Nexgen's representations was reasonable and therefore has not stated a claim for fraud or fraud in the inducement.  For that reason, Mays Mining's affirmative defenses of fraud and fraud in the inducement (Doc. 28 at 11–18) are insufficient as

10

a matter of law.  However, Mays Mining has sufficiently pled its affirmative defense

of mutual mistake for the same reasons discussed above.  Therefore, the motion to

strike is due to be granted only as it relates to the affirmative defenses of fraud and

fraud in the inducement.  But, again for the same reasons discussed above, the court

will permit Mays Mining to amend its counterclaim answer to state proper

affirmative defenses.

## IV.  CONCLUSION

For these reasons, it is ORDERED as follows:

1.     Nexgen's Motion to Dismiss (Doc. 10) is GRANTED in part and

DENIED in part.[2]

2.     Mays Mining's claim for fraud in the inducement (Count I) is

DISMISSED without prejudice, and Mays Mining's claim for reformation on any

theory other than mutual mistake (Count III) is DISMISSED with prejudice.

3.     Nexgen's Motion to Strike (Doc. 34) is GRANTED in part and

DENIED in part.

2.     Mays Mining will be allowed the opportunity to file an amended

complaint and an amended counterclaim answer to attempt to correct the

deficiencies in its fraud in the inducement claim and affirmative defenses.  Mays

---

[2] Nexgen styled one of its briefs as an additional motion to dismiss. *See* Doc. 21.  Accordingly, the Clerk of Court is DIRECTED to TERMINATE this motion.

Mining shall file a complete amended complaint and amended counterclaim answer on or before **June 9, 2021.** Both the amended complaint and counterclaim answer must be entire stand-alone pleadings and must set forth each and every allegation, claim, answer, and affirmative defense without reincorporating allegations, claims, answers, or affirmative defenses from any other pleading. The amended complaint shall omit any claim for reformation based on a theory other than mutual mistake. Mays Mining's failure to file an amended complaint within the time allotted will result in the dismissal with prejudice of its claim for fraud in the inducement.

3.      Rodney Mays' Motion for a More Definite Statement or to Dismiss (Doc. 26) is DENIED.

DONE and ORDERED on May 26, 2021.

_____

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE